# SUPREME COURT OF THE UNITED STATES

MISSOURI DEPARTMENT OF CORRECTIONS *v.*
JEAN FINNEY

ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF
APPEALS OF MISSOURI, WESTERN DISTRICT

No. 23–203.   Decided February 20, 2024

The petition for a writ of certiorari is denied.

Statement of JUSTICE ALITO respecting the denial of certiorari.

I agree that we should not grant certiorari in this case, which is complicated by a state-law procedural issue. But I write because I am concerned that the lower court's reasoning may spread and may be a foretaste of things to come.

In this case, the court below reasoned that a person who still holds traditional religious views on questions of sexual morality is presumptively unfit to serve on a jury in a case involving a party who is a lesbian. That holding exemplifies the danger that I anticipated in *Obergefell* v. *Hodges*, 576 U. S. 644 (2015), namely, that Americans who do not hide their adherence to traditional religious beliefs about homosexual conduct will be "labeled as bigots and treated as such" by the government. *Id.*, at 741 (dissenting opinion). The opinion of the Court in that case made it clear that the decision should not be used in that way, but I am afraid that this admonition is not being heeded by our society.

This case is about Missouri's for-cause dismissal of two jurors based on their religious beliefs. Jean Finney sued her employer, the Missouri Department of Corrections, in state court under the Missouri Human Rights Act, which prohibits employment discrimination on the basis of sex. See Mo. Rev. Stat. §213.055 (Cum. Supp. 2022). "Finney alleged that she is a lesbian who presents masculine"

and that "she was improperly stereotyped and discriminated against based on sex." App. to Pet. for Cert. 67a.

At the beginning of *voir dire*, Finney's attorney asked all the jurors what he characterized as "a tricky question," namely, whether any of them "went to a conservative Christian church" where "it was taught that people [who] are homosexua[l] shouldn't have the same rights as everyone else" because "what they did" was "a sin." *Id.*, at 29a–30a. The question was indeed "tricky" because it conflated two separate issues: whether the prospective jurors believed that homosexual conduct is sinful and whether they believed that gays and lesbians should not enjoy the legal rights possessed by others. In response to this question, some potential jurors raised their hands, and Finney's lawyer then questioned them individually.

During this phase of *voir dire*, Juror 4, a pastor's wife, stated that "homosexuality, according to the Bible, is a sin." *Id.*, at 38a. But she quickly added: "So is gossiping, so is lying." *Ibid.* "[N]one of us can be perfect. And so I'm here because it's an honor to sit in here and to perhaps be a part of, you know, a civic duty." *Ibid.*

Juror 13 similarly stated that he believes homosexuality is a sin because "it's in the Bible." *Id.*, at 33a. But he followed by noting that "every one of us here sins. . . . It's just part of our nature. And it's something we struggle with, hopefully throughout our life." *Id.*, at 33a–34a. And the fact that it is a sin "has really nothing to do with—in a negative way with whatever this case is going to be about." *Id.*, at 34a.

Finney's counsel moved to strike these jurors for cause, arguing that "there's no way . . . somebody [who] looks at a gay person and says . . . you are a sinner" could ever fairly consider a case involving a lesbian plaintiff. *Id.*, at 43a. The trial judge granted that motion. She noted that both jurors said "that they could follow the law," *id.*, at 45a, and

she did not suggest that she disbelieved them. Nevertheless, she concluded that she should "err on the side of caution," and she therefore dismissed Jurors 4 and 13 because there were "enough jurors left" without them. *Ibid.*

The Missouri Court of Appeals affirmed the dismissals for two reasons. First, it reasoned that the jurors' belief "that Finney's conduct was sinful (meaning immoral and wrong)" provided a sustainable ground for "concluding that they could not impartially and fairly decide her claim that she was unlawfully harassed due to her homosexuality— even if those veniremembers claimed that their religious beliefs would not prevent them from serving." *Id.*, at 78a.

Second, the court concluded that the jurors had been dismissed, not on the basis of their religious *status*, but on the basis of their religious *beliefs*. And this distinction, it said, made all the difference because, in its view, while dismissals based on a juror's "status as Christians" must comport with strict scrutiny, dismissals based on a juror's "views" need not. *Id.*, at 81a.

Before us, the Department of Corrections argues that these for-cause dismissals were unconstitutional, and I agree that the Court of Appeals' reasoning raises a very serious and important question that we should address in an appropriate case. The judiciary, no less than the other branches of State and Federal Government, must respect people's fundamental rights, and among these are the right to the free exercise of religion and the right to the equal protection of the laws. When a court, a quintessential state actor, finds that a person is ineligible to serve on a jury because of his or her religious beliefs, that decision implicates fundamental rights.

Under the Free Exercise Clause, state actions that "single out the religious for disfavored treatment" must survive "the 'most rigorous' scrutiny."* *Trinity Lutheran Church of*

_____

*The Department of Corrections relies on the Equal Protection Clause,

*Columbia, Inc.* v. *Comer*, 582 U. S. 449, 460, 466 (2017) (quoting *Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U. S. 520, 546 (1993)).   And that is true regardless of whether the differential treatment is predicated on religious status or religious belief.  Cf. *Carson* v. *Makin*, 596 U. S. 767, 786 (2022).  Our precedents make it clear that distinctions based on "religious *beliefs*," no less than distinctions based on religious status, must "advance 'interests of the highest order' and must be narrowly tailored in pursuit of those interests." *Lukumi*, 508 U. S., at 532, 546 (emphasis added).

Under Missouri law, "[t]he standard for determining whether a juror should be excused for cause is whether his or her views would 'prevent or substantially impair' the performance of duties as a juror." *State* v. *Ramsey*, 864 S. W. 2d 320, 336 (1993) (quoting *State* v. *McMillin*, 783 S. W. 2d 82, 91 (1990)).  If a court has a sound basis for concluding that a particular juror's beliefs would "prevent or substantially impair" his or her ability to render impartial justice, dismissal for cause clears that high bar. "The Constitution guarantees both criminal and civil litigants a right to an impartial jury." *Warger* v. *Shauers*, 574 U. S. 40, 50 (2014). So a court has an indisputably significant "interest in [seating] a . . . jury that can properly and impartially apply the law to the facts of the case." *Lockhart* v. *McCree*, 476 U. S. 162, 175 (1986).  Jurors are duty-bound to decide cases based on the law and the evidence, and a juror who cannot carry out that duty may properly be excused.  But otherwise, I see no basis for dismissing a juror for cause based on religious beliefs.

I would vote to grant review in this case were it not for

_____

but as the Court has done in prior cases involving claims of religious discrimination, I would analyze the claim here under the Free Exercise Clause.  See *Locke* v. *Davey*, 540 U. S. 712, 720, n. 3 (2004); *Johnson* v. *Robison*, 415 U. S. 361, 375, n. 14 (1974); *McDaniel* v. *Paty*, 435 U. S. 618 (1978).

the fact that the Court of Appeals concluded that the Department of Corrections did not properly preserve an objection to dismissal of the two potential jurors and, thus, that their dismissal was reviewable under state law only for plain error. Because this state-law question would complicate our review, I reluctantly concur in the denial of certiorari.